1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dow W. Patten (135931)
dow@forthrightlaw.com
Gregory M. Saavedra (314915)
gregory@forthrightlaw.com
Forthright Law, P.C.
50 California Street, Suite 1500
San Francisco, CA 94111-4612
Telephone (415) 228-6848
Facsimile (415) 228-6876

Attorneys for John Doe, Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE,

        Plaintiff,

    vs.

REGENTS OF THE UNIVERSITY OF
CALIFORNIA; and DOES 1 to 10, inclusive

       Defendants.

Case No.:

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1. **DISCRIMINATION BASED ON AGE**
   42 U.S.C. §§ 6101, *et seq.* (Age Discrimination Act of 1975)

2. **DISCRIMINATION BASED ON AGE**
   Cal. Gov. Code § 12900, *et seq.* (FEHA)

3. **DISCRIMINATION BASED ON DISABILTY**
   Cal. Gov. Code § 12900, *et seq.* (FEHA)

4. **HARASSMENT**
   Cal. Gov. Code § 12900, et seq. (FEHA)

5. **RETALIATION**
   Cal. Gov. Code § 12900, *et seq.* (FEHA)

6. **FAILURE TO PREVENT DISCRIMINATION AND RETALIATION**
   Cal. Gov. Code § 12900, *et seq.* (FEHA)

7. **WHISTLEBLOWER RETALIATION**
   Cal. Health & Safety Code § 1278.5

**JURY TRIAL DEMANDED**

Plaintiff's Complaint for Damages and Injunctive Relief
*John Doe v. Regents, et al.*

Plaintiff John Doe[1] ("Plaintiff") files this Complaint, and complains of the named Defendants REGENTS OF THE UNIVERSITY OF CALIFORNIA ("Regents") and DOES 1 through 10, inclusive (collectively, "Defendants"), and each of them, jointly and severally, and for claims, alleges as follows:

## JURISDICTION & VENUE

1.      This Court has federal question jurisdiction over this matter under the Age Discrimination Act of 1975, 42 U.S.C. §§ 6101 *et seq.*, and supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims.

2.      Venue is proper in this Court as the unlawful practices complained of occurred in the City and County of San Francisco, pursuant to 42 U.S.C. § 6104(e).

3.      This Court has personal jurisdiction over each the unlawful conduct alleged herein occurred within this judicial district.

4.      Plaintiff has been damaged in excess of the jurisdictional amount of this Court.

## INTRODUCTION

5.      This is an action for damages and injunctive relief for Age Discrimination, Disability Discrimination, Retaliation, Failure to Prevent Discrimination and Retaliation, and Whistleblower Retaliation. This action arises out of events involving Plaintiff and his education, training, and applications for residency at the MEDICAL SCHOOL and RESIDENCY 1, RESIDENCY 2, and RESIDENCY 3.

<u>The Parties</u>

6.      Plaintiff John Doe is a thirty-eight year-old male with auditory dyslexia who was a medical student of MEDICAL SCHOOL and, in 2020 and 2021, applied to residency training at RESIDENCY 1, RESIDENCY 2, and RESIDENCY 3.

7.      Defendant Regents constitute the governing board for the University of California. Regents is treated as the real party in interest in all legal actions involving the

---

1    Plaintiff is filing  a Motion to Proceed Pseudonymously and is prepared to confidentially disclose his identity to the Court.

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

University for all purposes under California law.

8.      Regents is an employer within the meaning of the California Fair Employment and Housing Act ("FEHA") because it regularly employs in excess of five employees.

9.      On information and belief, at all times herein mentioned, Defendants were and are the recipients of Graduate Medical Education funding issued by the Centers for Medicare and Medicaid Services. On information and belief, on or about June 28, 1993 Regents executed the Assurance of Compliance with the Department of Health and Human Services Regulation under the Age Discrimination Act of 1975. This Assurance of Compliance is an unambiguous waiver of Regents' Eleventh Amendment sovereign immunity pursuant to 42 U.S.C. § 2000d-7.

10.     Regents is an arm of the state of California. At all times herein mentioned, Defendants were and are entities of the State of California, and at all relevant times herein, Plaintiff's educator and prospective employer. Based on information and belief, Defendants are headquartered in the County of Alameda.

11.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1–10, inclusive, and Plaintiff therefore sues such defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences, acts, and omissions alleged herein and that Plaintiff's injuries as alleged herein were proximately caused by such aforementioned defendants.

12.     Plaintiff is informed and believes, and therefore alleges, that at all times mentioned herein Defendants were the agents, servants, employees and/or joint venturers of the other Defendants and were, as such, at all times mentioned acting within the scope, course and authority of this agency, employment and/or joint venture. Plaintiff is further informed and believes and, therefore alleges, that each of the Defendants consented to, ratified, participated in, or authorized the acts of the remaining defendants. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

//

Plaintiff's Complaint for Damages and Injunctive Relief
*John Doe v. Regents, et al.*

## FACTS COMMON TO ALL CLAIMS

<u>Academic Background</u>

13.     Plaintiff John Doe was a medical student at MEDICAL SCHOOL pursuing a career in medicine with a specialization in SPECIALIZATION 1. Plaintiff was conferred with a Doctor of Medicine with Distinction by MEDICAL SCHOOL in September 2021.

14.     Plaintiff has a lifelong learning disability. In the first grade, Plaintiff was diagnosed with auditory dyslexia and speech impairments arising from an inner ear condition. Plaintiff has undergone multiple ear tubes and surgeries, including otoplasty surgery at age twelve and additional surgeries as an adult. Through middle school, Plaintiff received intensive speech therapy. Special education services continued through high school. Plaintiff has been granted disability accommodations for academic and clinical duties throughout undergraduate and graduate school, medical school, and by the National Board of Medical Examiners ("NBME") for all written and clinical examinations. Plaintiff has learned to apply himself diligently to his studies.

15.     Plaintiff graduated in 2005 from UNDERGRADUATE UNIVERSITY with Bachelor and Master of Science degrees, and a Minor degree. Plaintiff's Bachelor of Science is conferred ACCOLADE 1.

16.     Plaintiff's education continued at GRADUATE UNIVERSITY, where in 2015 he was conferred with a Ph.D. by the GRADUATE UNIVERSITY PROGRAM. His academic achievements are summarized with a cumulative grade point average of 4.9 (out of 5.0) alongside his earning of over one million dollars in grants funding, multiple completed spaceflight experiments, ACCOLADE 2, ACCOLADE 3, and multiple fellowships including ACCOLADE 4 and ACCOLADE 5.

17.     Plaintiff pursued a Doctor of Medicine degree at MEDICAL SCHOOL, enrolling in August 2015. MEDICAL SCHOOL has consistently been highly-ranked globally for clinical medicine and pharmacy in the Academic Ranking of World Universities. Plaintiff engaged with the MEDICAL SCHOOL community as ACCOLADE 6, and served as ACCOLADE 7. As a researcher, Plaintiff has had over twenty peer-reviewed medical publications, including more

1  than eight first-author publications. Plaintiff held the ACCOLADE 8 fellowship from 2015–

2  2020, and also held the ACCOLADE 9 Fellowship in 2018. Plaintiff's enrollment at MEDICAL

3  SCHOOL is not merely the culmination of a lifetime of academic achievement, but a paving

4  stone on his path of continued success.

5       18.     Plaintiff extended their medical education to conduct clinical & translational

6  research.

7       19.     From June 2018 to June 2019, as part of ACCOLADE 10, Plaintiff received a

8  competitive merit award and extended his education to join the RESEARCH LABORATORY in

9  a year-long inquiry into SUBJECT OF LABORATORY STUDY. This lead to an industry

10  collaborative funding agreement, the creation of novel intellectual property, and a resulting

11  publication.

12       20.     MEDICAL SCHOOL recognizes students who take part in extended research by

13  conferring the degree of Doctor of Medicine with Distinction. As a result, Plaintiff was

14  conferred with a Doctor of Medicine with Distinction in September 2021.

15       21.     Records of achievement and recommendation are collected in a Medical Student

16  Performance Evaluation ("MSPE"). Plaintiff's MSPE indicates a grade of Pass for all courses,

17  and a grade of Honors for six courses in SPECIALIZATION 1 and SPECIALIZATION 2. Per

18  MEDICAL SCHOOL policy, "An honors grade may only be awarded for coursework supervised

19  by MEDICAL SCHOOL Faculty and is only awarded for student performance that is

20  measurably outstanding."

21       22.     On information and belief, for the Class of 2021 and future graduating classes,

22  MEDICAL SCHOOL has removed Honor grades for all core clerkships, rendering them

23  Pass/Fail only. Additionally, MEDICAL SCHOOL policy is to grade "away" rotations as

24  Pass/Fail only. On information and belief, Plaintiff's numerical scores for SPECIALIZATION 1

25  "away" rotations would qualify for Honors if not for MEDICAL SCHOOL'S policy.

26       23.     On information and belief, Plaintiff has completed more cumulative

27  SPECIALIZATION 1 subinternship months than any other MEDICAL SCHOOL graduating

28  student in either 2020 or 2021.

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

<u>Residency: An Essential Step to Licensure</u>

24.     After a medical degree (M.D.) is conferred, prospective medical practitioners must complete a period of Graduate Medical Education under the supervision of a senior medical clinician to obtain a license to practice medicine and, in particular, a license to practice a chosen speciality. This period of training is known as "residency." On information and belief, residencies in Plaintiff's applied-to specialties, SPECIALIZATION 1 and SPECIALIZATION 2, have a duration of 4–7 years. On information and belief, residents in those fields earn an average salary of $63,400.

25.     Residency is regulated by the National Resident Matching Program, a non-governmental organization that organizes an annual program to fill residency vacancies (the "Match"). In Match, a residency candidate selects, by rank, vacancies at participating entities across the nation. Similarly, participating entities select, by rank, candidates for the vacancies they have. The Match algorithm requires mutual selection between candidates and participating entities; placement is decided by "matching" the rank that the participating entity gives to a candidate with the rank that the candidate gives to a participating entity.

26.     Candidates that are not placed with a residency program by the Match may participate in the Supplemental Offer and Acceptance Program ("SOAP"). In SOAP, applicants may apply to up to 45 positions.

27.     As part of the Association of American Medical Colleges residency application form, Plaintiff entered his birthdate. On information and belief, birthdate is included among the information shared with participating entities as part of the Match and SOAP processes.

28.     On information and belief, in 2020, 93.7% of graduating U.S. M.D. senior medical students were selected for residency via the Match and SOAP; in 2021, 92.8% of graduating U.S. M.D. senior medical students were selected for positions via the Match and SOAP.

29.     MEDICAL SCHOOL conducts Graduate Medical Education including RESIDENCY 1 and RESIDENCY 2. In 2019 Plaintiff ranked RESIDENCY 1 such that, if RESIDENCY 1 ranked Plaintiff, they would have Matched. Plaintiff did not apply to or rank

RESIDENCY 2 or RESIDENCY 3 in 2019. In 2020 Plaintiff ranked RESIDENCY 1 and RESIDENCY 3 such that, if either RESIDENCY ranked Plaintiff, they would have Matched. Plaintiff did not apply to or rank RESIDENCY 2 in 2020. In 2021 Plaintiff ranked RESIDENCY 1, RESIDENCY 2, and RESIDENCY 3 such that, if any RESIDENCY ranked Plaintiff, they would have Matched.

## Plaintiff Encounters Adversity at MEDICAL SCHOOL

30.     Plaintiff's academic and professional excellence is distinguished in part because of its breadth. Plaintiff's education and inclination caused him to pursue a specialization in SPECIALIZATION 1 among the team at MEDICAL SCHOOL. Because Plaintiff engaged in extra-academic employment, fellowships, and research, the time it took for Plaintiff to advance through the academic process was accordingly longer.

31.     In 2017, Plaintiff first faced discrimination regarding his age and disability at MEDICAL SCHOOL. In October 2017, Plaintiff was told by a senior resident that he had to ask questions differently because he was "older" and exhibited a dyslexic speech pattern. In November 2017, Plaintiff made a complaint to the MEDICAL SCHOOL Office for Prevention of Harassment and Discrimination ("OPHD") about that conduct. OPHD conducted an investigation and an intervention was performed with the resident.

32.     On or about March 5, 2018, DOCTOR ALPHA who, as Course Director, addressed a group of more than twenty medical students at a third-year clerkship orientation. Among the group, DOCTOR ALPHA singled out Plaintiff: "[Plaintiff] is old as shit and won't be able to take overnight call."

33.     Plaintiff reported this incident to DEAN ALEF in-person on the same day. DEAN ALEF represented that DOCTOR ALPHA would be spoken-to after the clerkship. DEAN ALEF advised Plaintiff to not make a report with the OPHD because Plaintiff was interested in SPECIALIZATION 1—stating that such reports could subject Plaintiff to retaliation within the residency ranking process in that competitive specialization.

//

Plaintiff's Complaint for Damages and Injunctive Relief
*John Doe v. Regents, et al.*

34.     On or about October 1, 2019, Plaintiff applied for RESIDENCY 1 and residencies in SPECIALIZATION 1 at other locations.

35.     On or about January 9, 2020, Plaintiff was interviewed by DOCTOR BETA (Vice-Chair of SPECIALIZATION 1) as part of his application for RESIDENCY 1. During that interview, DOCTOR BETA told Plaintiff that he was "an older applicant" and asked Plaintiff to "justify why you won't burn out in 3–4 years to go into investment banking." DOCTOR BETA continued with questions regarding 80-hour duty requirements for residents immediately after addressing Plaintiff's age and the topic of "burn out." Plaintiff replied that he would work the "maximum 80-hour" requirement. It is well-known throughout MEDICAL SCHOOL that residents were expected to regularly exceed hourly limits in violation of rules set by the Accreditation Council for Graduate Medical Education.

36.     On or about January 10, 2020, Plaintiff met with DOCTOR GAMMA (Professor of SPECIALIZATION 1) as part of his application for RESIDENCY 1. During that meeting, DOCTOR GAMMA stated that age is used in resident selection decisions at RESIDENCY 1: "it's going to be a tough year for M.D.-Ph.D. Applicants." DOCTOR GAMMA clarified that DOCTOR DELTA (Residency Program Director) "doesn't want to train M.D.-Ph.D.s."

37.     On or about January 14, 2020, Plaintiff met with DOCTOR EPSILON (Chair of SPECIALIZATION 1) as part of his application for RESIDENCY 1. When Plaintiff entered DOCTOR EPSILON'S office, DOCTOR EPSILON immediately stated "well, you're only going to have a 25-year career in [SPECIALIZATION 1]."

38.     The pattern of three senior leaders of MEDICAL SCHOOL and RESIDENCY 1 uniformly and unequivocally addressing Plaintiff's age in connection with residency selection decision so disturbed Plaintiff that, on the same day of meeting DOCTOR EPSILON, he emailed DEAN ALEF to request a phone conversation regarding age discrimination within RESIDENCY 1 selection.

39.     On or about January 15, 2020, Plaintiff and DEAN ALEF spoke by telephone. DEAN ALEF again counseled Plaintiff about the risk of retaliation if he was to make a report with the OPHD. DEAN ALEF specifically mentioned retaliation by DOCTOR EPSILON who,

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

as Chair, had ready access to influence the selection decisions of other residencies to which Plaintiff had applied and ranked. DEAN ALEF told Plaintiff to delay any complaint until after the Match because MEDICAL SCHOOL could not prevent DOCTOR EPSILON from speaking poorly of Plaintiff concerning residency selection.

40.     On or about February 6, 2020, DOCTOR ZETA (Professor) told Plaintiff that, earlier that day, they had spoke with DOCTOR BETA on their way to the resident rank selection meeting. They discussed Plaintiff's age, "burn out," and Plaintiff's statements regarding the "maximum 80-hour" work week.

41.     At 8:30 p.m. the same day, Plaintiff received a call from an audibly upset DOCTOR GAMMA. DOCTOR GAMMA stated that Plaintiff's age was openly discussed and formally considered at the RESIDENCY 1 rank selection meeting.

42.     In that same call, DOCTOR GAMMA also informed Plaintiff that DOCTOR EPSILON spoke with the Chair of SPECIALIZATION 1 at Duke University, another school to which Plaintiff had ranked for residency. In that conversation, DOCTOR EPSILON made disparaging statements about Plaintiff to his Duke counterpart. On information and belief, it is likely that MEDICAL SCHOOL personnel have made similar statements to decision-making staff at other universities that Plaintiff interviewed with and/or ranked for residency.

43.     On February 9, 2020, DOCTOR GAMMA confirmed via text message that the committee formally considered age in their selection decision:

> "So [RESIDENCY 1 program selection committee] discussed the age of this kid [...] from Pitt but everyone felt like he was a bundle of energy and no concerns that he would be too old, in your case there were concerns that you might not have the stomach for the pace of our program. It is pretty brutal and the good [subinterns] are constantly on the move without stopping."

44.     Based on these events, on or about February 12, 2020, Plaintiff met in person with DEAN BET to report of discrimination and harassment as a MEDICAL SCHOOL student and in the residency selection process. DEAN BET apologized, and recommended not filing a written complaint until after March 20, 2020—the Match date for residency selection—citing the

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

risk of retaliatory action by faculty and staff of MEDICAL SCHOOL.

45. On February 14, 2020, Plaintiff met with DOCTOR GAMMA. DOCTOR GAMMA stated, "I can call my contacts at other [SPECIALIZATION 1] programs you've applied and tell them since we need to hire female residents for diversity, and we won't be taking you, that you're interested in their program." As the conversation continued, DOCTOR GAMMA reiterated that statements about Plaintiff's age and "slowness" were discussed during the evaluation of residency applications for RESIDENCY 1.

46. February 20, 2020 was the Due Date for the National Residency Rank List: when all candidates and participating entities must submit their ranked choices to the National Resident Matching Program to calculate the annual Match. In the Operating Room that day, DOCTOR ZETA mentioned to Plaintiff that he and DOCTOR BETA had spoke regarding "concerns about you burning out of residency" and they had observed that "as an older applicant, you have a more laid back personality."

47. The same day, Plaintiff reported this interaction to DEAN ALEF in-person. DEAN ALEF noted that "the intensity of discrimination and harassment clearly picked up in context of today being the rank list submission" and apologized that this was occurring at MEDICAL SCHOOL.

48. On February 21, 2020, Plaintiff was scrubbed into a sterile operating room for a morning case meeting with DOCTOR THETA[2] (Chief Resident, RESIDENCY 1) and DOCTOR IOTA (Associate Professor, SPECIALIZATION 1). The following interaction occurred:

> DOCTOR IOTA asked, "have either of you seen Forrest Gump?"
> Plaintiff replied, "I've seen it."
> DOCTOR THETA noted, "you know [Plaintiff] is 40."
> Plaintiff responded, "I'm thirty-six."
> DOCTOR THETA continued, "like it makes any difference."
> DOCTOR IOTA observed, "so, when you're done with residency, they
> can roll you right into the nursing home."

49. On or about March 16, 2020, Plaintiff learned that he did not match with a residency program. Plaintiff participated in the Supplemental Offer and Acceptance Program

---

2    For clarity, the Greek letter ETA has not been utilized.

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

(SOAP), applying to the maximum of 45 positions including all local unfilled surgical positions listed by MEDICAL SCHOOL. Plaintiff was ultimately not selected for any of these positions. On information and belief, MEDICAL SCHOOL selected other, less-qualified and/or less-experienced candidates for these positions.

50.     On or about March 17, 2020, Plaintiff spoke with DOCTOR ALPHA regarding general surgery positions at MEDICAL SCHOOL, and nationally, through SOAP. DOCTOR ALPHA is assigned by MEDICAL SCHOOL to coordinate with students regarding SOAP surgery positions. During their conversation, DOCTOR ALPHA asked Plaintiff to state his age. DOCTOR ALPHA, mirroring his statements in 2018, then stated "well, that's a problem because they got to believe you'll make it through 6–7 years of the hard grind." DOCTOR ALPHA's statements show that Plaintiff's age was foundational to MEDICAL SCHOOL's evaluation process for residency positions.

51.     On or about March 18, 2020, OFFICER ONE called Plaintiff to state that the OPHD would investigate some of Plaintiff's claims filed on February 9, 2020—however, the OPHD would not investigate any of Plaintiff's claims insofar as they related to age, and denied the applicability of any age discrimination law to Plaintiff's education, training, or employment. In October 2020, Plaintiff received a Notice of Formal Investigation from the OPHD that, once again, did not include investigations into Plaintiff's allegations of age discrimination.

<u>Discrimination in 2020 Continued to Affect 2021</u>

52.     In preparation for a successful residency application in 2021, Plaintiff spoke with with two representatives at MEDICAL SCHOOL: on or about July 30, 2020 with DOCTOR KAPPA (Assistant Professor, SPECIALIZATION 2 Medical Student Clerkship); and on or about September 11, 2020 with DOCTOR LAMBDA (Chair, SPECIALIZATION 2). Both discussed with Plaintiff a plan to apply to two fields in the 2021 Match: SPECIALIZATION 1, and SPECIALIZATION 2. On information and belief, SPECIALIZATION 2 is a less-competitive specialty than SPECIALIZATION 2 and has comparably more annual residency vacancies at MEDICAL SCHOOL and nationally.

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

53.    In 2020, DOCTOR NU[3] was Plaintiff's supervising resident at San Francisco General Hospital. As a result of protected activities by Plaintiff, DOCTOR NU was twice investigated by MEDICAL SCHOOL for comments made regarding national origin and denial of access to common educational spaces. On information and belief, after those investigations were initiated, DOCTOR NU made negative references to Plaintiff's age and disability.

54.    While DOCTOR NU was under investigation, MEDICAL SCHOOL selected DOCTOR NU to be a RESIDENCY 1 chief resident for the upcoming year (2021). As RESIDENCY 1's prospective 2021 chief resident, DOCTOR NU interviewed Plaintiff for RESIDENCY 1. In January 2021, Plaintiff observed DOCTOR NU to provide residency selection input to DOCTOR GAMMA specifically with regards to selection for RESIDENCY 1. Although DOCTOR NU did not have ultimate authority to rank residency candidates, MEDICAL SCHOOL did not remove DOCTOR NU from the selection process. DOCTOR NU participation permitted his discriminatory and retaliatory animus to play a part in the selection process, resulting in an adverse action to Plaintiff.

55.    On or about December 8, 2020, Plaintiff interviewed with RESIDENCY 3 as part of his 2021 application for residency. The interviewer, DOCTOR XI (Associate Professor, SPECIALIZATION 1) told Plaintiff regarding his application, "we obviously don't want someone that has migraines on-call." On information and belief, a letter of recommendation from MEDICAL SCHOOL stated that Plaintiff suffered from migraines, but also that those migraines were fully resolved with medications.

56.    On or about March 15, 2021, Plaintiff learned that he did not Match with any residency program for the second year in a row. Plaintiff again applied for the maximum 45 positions through SOAP, including all local unfilled surgical positions listed by MEDICAL SCHOOL. Plaintiff was not selected for any of these positions. On information and belief, MEDICAL SCHOOL selected other, less-qualified and/or less-experienced candidates for these positions. On information and belief, without Plaintiff's knowledge, MEDICAL SCHOOL staff disclosed to participating entities during 2021 Match and SOAP that Plaintiff applied to

3    For clarity, the Greek letter MU has not been utilized.

Plaintiff's Complaint for Damages and Injunctive Relief
*John Doe v. Regents, et al.*

residency vacancies for both SPECIALIZATION 1 and SPECIALIZATION 2. On information and belief, such a disclosure is material to selection because participating entities consider exclusive interest in a specialty to be critical to their selection of residents.

57.    On or about March 19, 2021, Plaintiff was contacted by DOCTOR OMICRON (Chair in SPECIALIZATION 1), who oversaw SPECIALIZATION 1 trainees in 2020 including Plaintiff. During a virtual meeting, DOCTOR OMICRON told Plaintiff that he had refused to select Plaintiff for RESIDENCY 1.

58.    During that virtual meeting, DOCTOR OMICRON made comments reflecting age and disability stereotypes. DOCTOR OMICRON framed his refusal to select as "you have a higher risk of killing a patient than others" and "your capacity to work long hours is not good enough to be a resident." Plaintiff inquired as to what made him differently-qualified from other fully-trained medical students; DOCTOR OMICRON repeated, "just based on my experience of training many residents you are a higher risk of resulting in the death of patients," and refused, when asked, to provide specific examples. DOCTOR OMICRON'S 2021 comments contrast his evaluation of Plaintiff for a 2018 clinical clerkship, where he wrote: "[Plaintiff] was thorough and very personable with the patients. He had a good bedside manner. [Plaintiff] took on a project to improve intraoperative targeting accuracy. Keep up the good work!"

59.    On or about March 25, 2021, Plaintiff took part in a remote conversation with DEAN GIMEL and DEAN ALEF. The goal of the meeting was for Plaintiff to extend graduation to May 2022 to afford clinical opportunities necessary to be eligible to apply into alternative medical specialties. During the meeting, DEAN GIMEL stated she had a recent conversations with DOCTOR PI (Chairman, SPECIALIZATION 1) and DOCTOR OMICRON regarding concerns about Plaintiff's "durability for a [SPECIALIZATION 1] residency." The term "durability" references Plaintiff's age, relative to stereotypical medical residents, and how it was used by decision-makers to determine his ability to perform during a years-long residency program.

60.    DEAN GIMEL characterized DOCTOR OMICRON statements as "a lot of times people say things they shouldn't say."

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

61.     The March 25 conversation also extended to Plaintiff's disability. When discussing residency possibilities, DEAN GIMEL told Plaintiff that "[MEDICAL SCHOOL] was aware of your disability accommodations, and they may not be appropriate for residency."

<u>MEDICAL SCHOOL Did Not Select Plaintiff for Residency Because of his</u>

<u>Age, Disability, and Engagement in Protected Activities.</u>

62.     Because of Plaintiff's age, disability, and engagement in protected activities, current and former members of the MEDICAL SCHOOL violated NRMP and MEDICAL SCHOOL Policies concerning residency rank and selection to ensure Plaintiff would not be ranked or selected for any residency that would further his career in medicine. The consistency over two years among faculty and staff at MEDICAL SCHOOL in their statements and actions toward Plaintiff indicate that discrimination against age and disability are a pattern and practice of MEDICAL SCHOOL.

63.     On or about December 14, 2020 and April 1, 2021, Plaintiff obtained Rights to Sue from the California Department of Fair Employment and Housing and has hereby exhausted his administrative remedies.

**FIRST CLAIM**

<u>Age Discrimination in Violation of the 1975 Act</u>

(Alleged Against Defendant Regents and Does 1-5)

64.     Plaintiff re-alleges, as though fully set forth herein, the factual allegations in paragraphs 1 through 63 set forth above.

65.     The Age Discrimination Act of 1975, 42 U.S.C. §§ 6101 *et seq.*, prohibits exclusion from participation and discrimination on the basis of age in programs or activities receiving federal financial assistance. 42 U.S.C. § 6102 states ". . . no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance."

66.     On or about April 22, 2021, Plaintiff submitted an administrative complaint of

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

Age Discrimination to the U.S. Department of Education Office for Civil Rights pursuant to 34 C.F.R. Part 110. On or about March 25, 2021, Plaintiff submitted an administrative complaint of Age Discrimination to U.S. Department of Health and Human Services Office for Civil Rights pursuant to 45 C.F.R. Parts 90. On or about October 26, 2021, after the administrative complaints were exhausted and pursuant to 42 U.S.C. § 6104(e), Plaintiff duly provided notice to the Secretary of Health and Human Services, the Attorney General of the United States, and the Regents of the University of California, receipt of which has been confirmed. Therefore, Plaintiff has duly exhausted his administrative remedies.

67.     At all times relevant, Plaintiff was older in age than his peers.

68.     Plaintiff was otherwise qualified to perform the tasks expected of a resident in the fields of SPECIALIZATION 1, SPECIALIZATION 2, emergency medicine, and general surgery.

69.     Plaintiff was subjected to discrimination because of his age.

70.     The Regents acted with discriminatory intent because the actors knew of Plaintiff's age when they did not select Plaintiff for residency, and, on information and belief, MEDICAL SCHOOL School of Medicine staff informed other institutions of Plaintiff's disability.

71.     Regents regarded Plaintiff as old within the meaning of the Age Discrimination Act of 1975 at the times Regents failed to select Plaintiff for residency.

72.     As a direct result of the acts and conduct of Defendants as alleged herein, Plaintiff was unlawfully denied educational opportunities and is thereby entitled to relief enjoining Defendants from continuing to deny Plaintiff educational opportunities.

73.     As a direct and proximate result of the willful, knowing, discrimination, Plaintiff has suffered depression, mental distress, anguish, and indignation. He is thereby entitled to general and compensatory damages in an amount to be proven at trial.

74.     The conduct of Defendants described herein above was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

*John Doe v. Regents, et al.*

75.     Defendants committed the acts alleged herein by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover nominal, actual, and compensatory damages an attorneys' fees in amounts according to proof at time of trial, in addition to any other remedies and damages allowable by law. WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

**SECOND CLAIM**

Age Discrimination in Violation of the FEHA

(Alleged Against Defendant Regents and Does 1-5)

76.     Plaintiff re-alleges, as though fully set forth herein, the factual allegations in paragraphs 1 through 75 set forth above.

77.     Under the FEHA, it is unlawful "[f]or an employer,...because of...age...to discriminate against [an employee]...in terms, conditions, or privileges of employment." Cal. Gov. Code § 12940(a). "'Age,'" within the meaning of the FEHA, "refers to the chronological age of any individual who has reached a 40th birthday" and "includes a perception that the person has any of those characteristics." Cal. Gov. Code § 12926, subds. (b), (o).

78.     Plaintiff is part of a protected class under the California Fair Employment and Housing Act: he was perceived to be at or over the age of 40 at all times relevant.

79.     In addition to being perceived as having reached his 40th birthday, Plaintiff is also part of a protected class because he sought education, training, and employment for a fixed term of 4–7 years during which Plaintiff would have reached his 40th birthday.

80.     This is a case of first impression, brought as a good-faith extension of existing law. No case has, on information and belief, been brought under the FEHA wherein a Plaintiff under the age of 40 has sought education, training, and employment for a fixed period of time during which Plaintiff will reach their 40th birthday.

81.     Defendants took adverse education, training, and employment action by failing to select Plaintiff based on imputations of Plaintiff's abilities vis a vis his perceived age. Defendants

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

1   also took adverse employment action by making representations about Plaintiff's age to third

2   parties for the purpose of eliminating his ability to be trained within SPECIALIZATION 1.

3      82.    Plaintiff's protected class (perceived age; actual age over the course of a fixed

4   term of education, training, and employment) was a substantial motivating factor in the decisions

5   to engage in the adverse actions set forth above.

6      83.    As a direct result of the acts and conduct of Defendants as alleged herein, Plaintiff

7   has suffered a loss of earnings and related benefits in an amount to be proven at trial herein.

8      84.    As a direct and proximate result of the willful, knowing, discrimination, Plaintiff

9   has suffered depression, mental distress, anguish, and indignation. He is thereby entitled to

10   general and compensatory damages in an amount to be proven at trial.

11      85.    The conduct of Defendants described herein above was outrageous and was

12   executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights,

13   and further, with the intent, design and purpose of injuring Plaintiff.

14      86.    Defendants committed the acts alleged herein by acting knowingly and willfully,

15   with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives

16   amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to

17   recover nominal, actual, and compensatory damages an attorneys' fees in amounts according to

18   proof at time of trial, in addition to any other remedies and damages allowable by law.

19      87.    As pleaded above, Plaintiff has duly exhausted his administrative remedies.

20   WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

21

22                              **THIRD CLAIM**

23                  Disability Discrimination in Violation of the FEHA

24                  (Alleged Against Defendant Regents and Does 1-5)

25      88.    Plaintiff re-alleges, as though fully set forth herein, the factual allegations in

26   paragraphs 1 through 87 set forth above.

27      89.    Under the FEHA, it is unlawful "[f]or an employer,...because of...mental

28   disability...to discriminate against [an employee]...in terms, conditions, or privileges of

*John Doe v. Regents, et al.*

employment." Cal. Gov. Code § 12940(a). A "'[m]ental disability'" within the meaning of the FEHA includes "any mental or psychological disorder..., such as...emotional or mental illness...that limits a major life activity." Cal. Gov. Code § 12926(j)(1). The term "'[m]ajor life activities'" is "broadly construed and includes physical, mental, and social activities and working" (id., subd. (j)(1)(C)); "limits" means the achievement of a major life activity is made difficult. Id., subd. (j)(1)(A) & (B))

90.     At all times relevant, Plaintiff suffered and suffers from a disability: dyslexia.

91.     Plaintiff was otherwise qualified to do the job with or without reasonable accommodation.

92.     Plaintiff was subjected to an adverse employment action because of the disability.

93.     The Regents acted with discriminatory intent, as MEDICAL SCHOOL knew of Plaintiff's disability when they did not select Plaintiff for residency, and when, through DOCTOR EPSILON, acting in his role as Chair, they informed other institutions of Plaintiff's disability.

94.     Regents regarded Plaintiff as disabled within the meaning of the FEHA at the time of each adverse employment action.

95.     As a direct result of the acts and conduct of Defendants as alleged herein, Plaintiff has suffered a loss of earnings and related employment benefits in an amount to be proven at trial herein.

96.     As a direct and proximate result of the willful, knowing, discrimination, Plaintiff has suffered depression, mental distress, anguish, and indignation. He is thereby entitled to general and compensatory damages in an amount to be proven at trial.

97.     The conduct of Defendants described herein above was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

98.     Defendants committed the acts alleged herein by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

1  recover nominal, actual, and compensatory damages an attorneys' fees in amounts according to

2  proof at time of trial, in addition to any other remedies and damages allowable by law.

3      99.    As pleaded above, Plaintiff has duly exhausted his administrative remedies.

4  WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

5

6                              **FOURTH CLAIM**

7                    Harassment in Violation of the FEHA

8                (Alleged Against Defendant Regents and Does 1-10)

9      100.   Plaintiff re-alleges, as though fully set forth herein, the factual allegations in

10  paragraphs 1 through 99 set forth above.

11     101.   Under the FEHA, it is unlawful "[f]or an employer,...because of...mental

12  disability...[or] age...to harass an employee, an applicant, an unpaid intern or volunteer." Cal.

13  Gov. Code § 12940(j)(1). Regulations interpreting the FEHA define "harassment" to include,

14  inter alia, "Verbal harassment, e.g., epithets, derogatory comments or slurs." 2 Cal. Code of

15  Regulations § 11019(b)(2)(A).

16     102.   Plaintiff belongs to a protected group because of his age and disability. Plaintiff

17  was and is perceived to be over the age of 40; and, Plaintiff applied for education, training, and

18  employment by Defendants for a fixed term of 4–7 years, during which Plaintiff would have

19  reached his 40th birthday. Plaintiff suffers from a disability: auditory dyslexia.

20     103.   Plaintiff was subject to verbal harassment because of his age and disability.

21  Employees and agents of Defendant made disparaging statements to Plaintiff and to third parties

22  in connection with Plaintiff's perceived age and disability. Those same employees and agents

23  had discretion by virtue of their employment by Defendant to rank, select, or hire candidates for

24  the positions that Plaintiff applied for. Therefore, the harassing statements altered the conditions

25  of Plaintiff's pending and future applications with Defendant and with other institutions.

26     104.    As a direct result of the acts and conduct of Defendants as alleged herein,

27  Plaintiff has suffered a loss of earnings and related benefits in an amount to be proven at trial

28  herein.

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

105.     As a direct and proximate result of the willful, knowing, harassment, Plaintiff has suffered depression, mental distress, anguish, and indignation. He is thereby entitled to general and compensatory damages in an amount to be proven at trial.

106.     The conduct of Defendants described herein above was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

107.     Defendants committed the acts alleged herein by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover nominal, actual, and compensatory damages an attorneys' fees in amounts according to proof at time of trial, in addition to any other remedies and damages allowable by law.

108.     As pleaded above, Plaintiff has duly exhausted his administrative remedies.

WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

## FIFTH CLAIM

### Retaliation in Violation of the FEHA

(Alleged Against Defendant Regents and Does 1-5)

109.     Plaintiff re-alleges, as though fully set forth herein, the factual allegations in paragraphs 1 through 108 set forth above.

110.     Under the FEHA, it is unlawful "[f]or any employer...to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code § 12940(h).

111.     Plaintiff engaged in protected activity, to wit, making internal and external complaints regarding violations of the FEHA, including discrimination and harassment.

112.     The individuals responsible for the decision-making regarding residency and other factors at MEDICAL SCHOOL knew of Plaintiff's protected activities.

113.     Plaintiff suffered adverse actions as set forth above.

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

114. The adverse actions occurred in close temporal proximity to Plaintiff's complaints, and to the investigations surrounding those complaints performed by the University's Office for the Prevention of Harassment and Discrimination and the University of California Office of the President.

115. Plaintiff's protected activities were a substantial motivating factor in the decisions to not select him for residency via Match and SOAP, and the other adverse actions set forth above.

116. As a direct result of the acts and conduct of Defendants as alleged herein, Plaintiff has suffered a loss of earnings and related employment benefits in an amount to be proven at trial herein.

117. As a direct and proximate result of the willful, knowing, retaliation, Plaintiff has suffered depression, mental distress, anguish, and indignation. He is thereby entitled to general and compensatory damages in an amount to be proven at trial.

118. The conduct of Defendants described herein above was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

119. Defendants committed the acts alleged herein by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover nominal, actual, and compensatory damages an attorneys' fees in amounts according to proof at time of trial, in addition to any other remedies and damages allowable by law.

120. As pleaded above, Plaintiff has duly exhausted his administrative remedies.

WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

### SIXTH CLAIM

<u>Failure to Prevent Discrimination and Retaliation</u>

(Alleged Against Defendant Regents and Does 1-5)

121. Plaintiff re-alleges, as though fully set forth herein, the factual allegations in

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

paragraphs 1 through 120 set forth above.

122.    Under the FEHA, it is unlawful "[f]or an employer...to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov. Code 12940(k).

123.    Plaintiff utilized available complaint procedures to alert Defendants of the discrimination and harassment. In many instances, Plaintiff was encouraged not to use, or to delay the use of, Defendants' complaint procedures.

124.    Defendants have failed to take all reasonable steps necessary to prevent discrimination and retaliation against Plaintiff.

125.    Defendants have violated their own internal policies in failing to prevent discrimination and retaliation.

126.    As a direct result of the acts and conduct of Defendants as alleged herein, Plaintiff has suffered a loss of earnings and related employment benefits in an amount to be proven at trial herein.

127.    As a direct and proximate result of the willful, knowing, retaliation, Plaintiff has suffered depression, mental distress, anguish, and indignation. He is thereby entitled to general and compensatory damages in an amount to be proven at trial.

128.    The conduct of Defendants described herein above was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

129.    Defendants committed the acts alleged herein by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover nominal, actual, and compensatory damages an attorneys' fees in amounts according to proof at time of trial, in addition to any other remedies and damages allowable by law.

130.    As pleaded above, Plaintiff has duly exhausted his administrative remedies.

WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

//

Plaintiff's Complaint for Damages and Injunctive Relief

*John Doe v. Regents, et al.*

**SEVENTH CLAIM**

Whistleblower Retaliation in Violation of Health & Safety Code § 1278.5

(Alleged Against Defendant Regents and Does 1-10)

131.    Plaintiff re-alleges, as though fully set forth herein, the factual allegations in paragraphs 1 through 130 set forth above.

132.    California Health & Safety Code § 1278.5 prohibits discrimination or retaliation against a "employee, member of the medical staff, or other health care worker" of a health facility because that person either "presented a grievance, complaint, or report" or "initiated, participated, or cooperated in an investigation or administrative proceeding related to the quality of care, services, or conditions at the facility..."

133.    Defendants retaliated against Plaintiff because he reported to superiors regarding unsafe patient practices arising from resident scheduling in violation of ACGME Duty Hour Limits. Plaintiff's reports were made using MEDICAL SCHOOL's available complaint procedures.

134.    As alleged above, because of Plaintiff's reports relating to unsafe patient practices, Defendants retaliated against Plaintiff by failing to educate, rank, select, or hire Plaintiff. Defendants also retaliated by making representations about Plaintiff 's reports to third parties for the purpose of eliminating his ability to be educated, ranked, selected, or hired within the SPECIALIZATION 1 field.

135.    As a direct result of the acts and conduct of Defendants as alleged herein, Plaintiff has suffered a loss of earnings and related benefits in an amount to be proven at trial herein.

136.    As a direct and proximate result of the willful, knowing, retaliation, Plaintiff has suffered depression, mental distress, anguish, and indignation. He is thereby entitled to general and compensatory damages in an amount to be proven at trial.

137.    Defendants committed the acts alleged herein by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover nominal, actual, and compensatory damages an attorneys' fees in amounts according to

*John Doe v. Regents, et al.*

proof at time of trial, in addition to any other remedies and damages allowable by law.

138.   As pleaded above, Plaintiff has duly exhausted his administrative remedies. WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.   For a mandatory injunction, requiring Defendants to take affirmative steps to root out and remedy the pattern and practice of discriminatory, retaliatory, and harassing behavior, including an audit, retraining, and discipline where warranted, supervised by a court-appointed special master or other process, at the Defendants' expense;

2.   For a mandatory injunction, requiring Defendants to enter Plaintiff into a PGY1 resident position in the RESIDENCY 1 or comparable University of California SPECIALIZATION 1 residency program;

3.   For a mandatory injunction, requiring Defendants to enter with the Accreditation Council for Graduate Medical Education months of elective time credit for Plaintiff equal to, but not exceeding 30, Plaintiff's lost residency and employment time resulting from Defendant's discrimination, retaliation, and harassment;

4.   For general and compensatory damages in amounts according to proof and in no event in an amount less than the jurisdictional limit of this Court;

5.   For special damages in amounts according to proof;

6.   For punitive and exemplary damages against individual defendants only, to deter future unlawful conduct,

7.   For attorneys' fees as provided by law;

8.   For interest as provided by law;

9.   For costs of suit herein; and

10.   For such other and further relief as the Court deems fair and just.

//

Dated: December 13, 2021                    FORTHRIGHT LAW, P.C.


                                            By:   /s/  Dow W. Patten
                                            Dow. W. Patten
                                            Gregory M. Saavedra
                                            Attorneys for Plaintiff
                                               John Doe


## **JURY DEMAND**

Plaintiff demands trial by jury of all matter so triable.


Dated: December 13, 2021                    FORTHRIGHT LAW, P.C.


                                            By:   /s/  Dow W. Patten
                                            Dow. W. Patten
                                            Gregory M. Saavedra
                                            Attorneys for Plaintiff
                                               John Doe

Plaintiff's Complaint for Damages and Injunctive Relief
*John Doe v. Regents, et al.*