UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DR. JORDAN SPATZ, M.D., PH.D., <br><br> Plaintiff, <br><br> v. <br><br> REGENTS OF THE UNIVERSITY OF CALIFORNIA, <br><br> Defendant. | Case No. 21-cv-09605-LB <br><br> **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** <br><br> Re: ECF No. 56 |

### INTRODUCTION

The plaintiff, Jordan Spatz, is a 2021 medical-school graduate from the University of California, San Francisco. He applied to residency programs in 2020, 2021, and 2022 (including at UCSF) but did not obtain a residency placement anywhere in the country. The defendant, the Regents of the University of California, operated the medical school. The plaintiff claims violations of federal and state laws, including a claim for age discrimination under the federal Age Discrimination Act of 1975.[1] He moved for a preliminary injunction to (1) require the Regents to give him a neurological-surgery residency at UCSF immediately or keep a position open for him pending a determination about whether his age played a role in the selection process, (2) prevent

---

[1] First Am. Compl. – ECF No. 31 at 16–18 (¶¶ 67–80); Spatz Decl. – ECF No. 56-1 at 2 (¶ 6). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 21-cv-09605-LB

the Regents from denying him authorship credit for his work at the Aghi Laboratory with Dr. Manish Aghi, and (3) appoint a special master to observe UCSF's processes for selecting residents and giving letters of recommendation to ensure that age is not a factor in those processes.[2]

The court denies the motion. On this record, the plaintiff is not likely to succeed on the merits of his claim, the balance of equities favors the defendant, and a preliminary injunction is not in the public interest.

## STATEMENT

The plaintiff, now age 39, graduated from UCSF medical school in 2021. He applied for residencies in 2020, 2021, and 2022 at UCSF's Neurological Surgery residency program and other programs through a program called the National Resident Matching Program. He did not match with any Neurological Surgery program anywhere. In 2021, he also applied for a Neurology residency at UCSF and elsewhere (ranking UCSF number thirteen, his highest ranking for neurology), and did not match with any Neurology residency. In 2020 and 2021, he applied — through the Supplemental Offer and Acceptance Program (for students who did not match through the first program) — to the maximum number of positions allowed and was not selected for residency training.[3]

In 2022, the plaintiff matched with a one-year non-categorical preliminary surgery residency at Oregon Health & Science University and started in July 2022. That program does not have the possibility of licensure. If the plaintiff does not match into a categorical residency program in 2023 or beyond, he will not make progress toward licensure.[4]

The plaintiff describes the match process in more detail. Qualifications that matter include the type of applicant, the ranking of the medical school, USMLE Step 1 and Step 2 scores, research experiences, number of publications, work and volunteer experiences, and other graduate

---

[2] Mot. – ECF No. 56 at 2, 7.

[3] Spatz Decl. – ECF No. 56-1 at 1 (¶ 1), 4 (¶¶ 14–15), 5 (¶¶ 22–24), 6 (¶¶ 29–30).

[4] *Id.* at 6 (¶¶ 31–33).

degrees.[5] Top schools like UCSF have high match rates, even for competitive residencies. UCSF's match rate for M.D. seniors was around ninety-three percent for the three match years here, and the overall match rates for UCSF students over the last five years were above ninety-seven percent.[6]

Neurological surgery is one of the most competitive specialties: candidates in the three match years overall matched at around seventy-four percent. Excluding the plaintiff, UCSF students from 2018 to 2022 had a nearly ninety-three-percent match rate.[7] Neurology is a specialty with average competitiveness: candidates in three match years overall matched at around fifty-one to fifty-three percent. Excluding the plaintiff, UCSF students from 2018 to 2022 had a one-hundred-percent match rate.[8]

Based on UCSF data and the plaintiff's qualifications (rank of school, scores, research experiences, publications, work and volunteer experiences, and graduate degree), he should have had more than a ninety-percent change of matching into a Neurological Surgery residency. His not matching seems "highly aberrant." His not matching in neurology in 2021 is aberrant too.[9]

When selecting residents, programs consider a candidate's history of applications through the two programs. If a qualified candidate is not selected after the first year of applying, then the chances of matching into a residency decreases significantly. After two years, the chances are near zero.[10]

The plaintiff describes difficulties surrounding his education and applications.

---

[5] Miller Decl. – ECF No. 57 at 2 (¶ 5). The defendant objects to this evidence on the ground that there is no evidence of the declarant's expertise. Opp'n – ECF No. 63 at 6. The court weights the evidence accordingly. It in any event does not change the outcome. The court also judicially notices the World Health Organization 202 Global Report on Ageism, which the plaintiff offered to show the importance of discrimination based on age. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (court may judicially notice information on government websites that is not reasonably subject to dispute).

[6] Miller Decl. – ECF No. 57 at 2 (¶ 6) (presumably means 2020, 2021, and 2022) & (¶ 7).

[7] *Id.* at 3 (¶¶ 8–9).

[8] *Id.* (¶¶ 10–11).

[9] *Id.* at 3–4 (¶¶ 12, 14).

[10] *Id.* at 4–5 (¶¶ 14–19).

ORDER – No. 21-cv-09605-LB           3

First, he experienced age discrimination at UCSF. In October 2017 (two years after he matriculated), a senior resident told him that he had to ask questions differently because he was "older" and had a dyslexic speech pattern. The plaintiff filed a complaint with the UCSF Office for Prevention of Harassment and Discrimination.[11] In March 2018, Andre Campbell, M.D., FACS, FACP, FCCM (the director of the UCSF Surgical Critical Care fellowship and Vice-Chair for DEI) spoke to more than twenty medical students at a third-year clerkship orientation and said that the plaintiff "is old as shit and won't be able to take overnight call." The plaintiff reported this to Leon Jones, the Associate Dean of UCSF School of Medicine, who told him not to file a complaint because it could subject the plaintiff to retaliation within the residency-ranking process in the Neurological Surgery specialization.[12]

Second, from June 2018 to June 2019, the plaintiff extended his education to join the Aghi Laboratory to study glioblastoma immunotherapy. He organized intellectual-property and technology-transfer agreements with MIT, invented, and conducted research at the Aghi Laboratory. Manish Aghi, M.D., Ph.D., MAS — a professor of Neurological Surgery — promised that the plaintiff would be named co-first author for any resulting publications, patents, and manuscripts. The intellectual property and technology that he brought to the Aghi Lab have been cited in multiple patent applications and publications, but he has not been credited with authorship that corresponds to his contributions (let alone co-first-author credit). Without authorship, he cannot use the work to support his candidacy for categorical residency training.[13]

Third, age was an issue during the residency-application process in 2020 and 2021.[14] The next three sections describe the 2020 application, the 2021 application, and the defendant's evidence.

---

[11] Spatz Decl. – ECF No. 56-1 at 1–2 (¶¶ 1–2).

[12] *Id.* at 2 (¶ 3).

[13] *Id.* at 2 (¶¶ 4–5).

[14] *See supra* ¶ 1 of this section (describing overall process generally).

ORDER – No. 21-cv-09605-LB                4

**1. 2020 Application**

In 2020, Dr. Aghi gave the plaintiff a letter of recommendation.[15]

The plaintiff interviewed with UCSF faculty members in January 2020. Praveen Mummaneni, M.D., the Vice-Chair of the Neurological Surgery Department, told him that he was an "older applicant," asked him to "justify why you won't burn out in 3–4 years and go into investment banking," and said on his evaluation form, "not sure he has enough stamina for NS [Neurological Surgery] residency" and "Yes, okay to rank." (The other options were "Yes! Top 3! Rank to Match!" and "No (please explain above).")[16]

Dr. Aghi told him, "it's going to be a hard year for M.D.–Ph.D. Applicants" because Philip Theodosopolous, M.D., the Residency Program Director, "doesn't want to train M.D.–Ph.D.s," and (in his evaluation form) said, "Not a great fit for us" and "Yes, okay to rank."[17] (By contrast, his performance evaluation of the plaintiff in 2019 during the research year at the Aghi Lab said, "Jordon did an amazing job leading his project in an autonomous and thoughtful manner. He is well on track to being a phenomenal neurosurgeon-scientist."[18]) Grant Gauger, M.D., said that assessments by incumbent residents were important and voted not to rank him.[19] Dr. Raygor, a resident, noted the "[g]reat letter from Dr. Aghi," said that the plaintiff "did not understand the rigors of residency" (referencing his question about whether "the program plans to do anything to make the residency easier"), said that he was "not sure that he would be a good fit," and voted not to rank him.[20] Dr. Gupta said, under "areas of concern," "36 y/o [years old]" and voted "Yes, okay to rank."[21] Mitchel Berger, M.D., the Chair of Neurological Surgery, said, "well, you're only

---

[15] Spatz Decl. – ECF No. 56-1 at 2 (¶ 8).

[16] *Id.* at 3 (¶ 9(a)); Evaluation, Ex. A to Patten Decl. – ECF No. 56-2 at 5.

[17] Spatz Decl. – ECF No. 56-1 at 3 (¶ 9(b)); Evaluation, Ex. B to Patten Decl. – ECF No. 56-2 at 7.

[18] Evaluation, Ex. G to Spatz Decl. – ECF No. 56-1 at 35.

[19] Evaluation, Ex. C to Patten Decl. – ECF No. 56-2 at 9.

[20] Evaluation, Ex. D to *id.* – ECF No. 56-2 at 11.

[21] Evaluation, Ex. E to *id.* – ECF No. 56-2 at 13.

ORDER – No. 21-cv-09605-LB                5

going to have a 25-year career in neurosurgery."[22] That day, the plaintiff emailed Dean Jones to discuss age discrimination in the residency-selection process.[23]

On February 6, 2020, Sigurd Berven, M.D., a professor, told the plaintiff that he had spoken with Dr. Mummaneni on their way to the resident-rank-selection meeting. They discussed the plaintiff's age, "burn out," and the plaintiff's statements about a "maximum 80-hour work week."[24] That day, Dr. Aghi called him and said that the plaintiff's age "was openly discussed and formally considered at the UCSF Neurological residency rank selection meeting."[25]

On February 9, 2020, Dr. Aghi sent a text that contrasted another applicant to the plaintiff: "So they discussed the age of this kid [N]ate from Pitt but everyone felt like he was a bundle of energy and no concerns that he would be too old[;] in your case there were concerns that you might not have the stomach for the pace of our program. It is pretty brutal and the good subIs [subinterns] are constantly on the move without stopping."[26] On February 14, 2020, Dr. Aghi said that the plaintiff's "age and slowness were discussed during the UCSF Neurological Surgery residency rank selection meeting."[27]

On February 20, 2020, Dr. Berven said that (at the resident-rank-selection meeting) "they had also discussed concerns about you [the plaintiff] burning out of residency" and "they had observed that as an older applicant, you have a more laid back personality."[28]

In March 2020, Dr. Campbell asked the plaintiff his age and then said, "well, that's a problem because they got to believe you'll make it through 6–7 years of the hard grind."[29]

In March 2020, Grant Abernathy, MPA, called the plaintiff (presumably regarding the plaintiff's complaint) and said UCSF's Office for Prevention of Harassment and Discrimination

---

[22] Spatz Decl. – ECF No. 56-1 at 3 (¶ 9(c)).

[23] *Id.* at 4 (¶ 17).

[24] *Id.* at 3 (¶ 10(a)) (cleaned up).

[25] *Id.* (¶ 10(b)).

[26] Text Chain, Ex. B to Spatz Decl. – ECF No. 56-1 at 12.

[27] Spatz Decl. – ECF No. 56-1 at 3 (¶ 12(a)) (cleaned up).

[28] *Id.* (¶ 12(b)) (cleaned up).

[29] *Id.* at 4 (¶ 16).

ORDER – No. 21-cv-09605-LB                6

would investigate some claims but not any claims based on age (and denied the applicability of age-discrimination laws).[30] In October 2020, the Office advised the plaintiff that it would investigate his claims that UCSF failed to admit him to its residency program because of his auditory-dyslexia disability and UCSF's preference to admit persons who were not born in the U.S. or were first-generation children of immigrants. The letter does not mention any allegation of age discrimination.[31]

### 2. 2021 Application

In 2021, Dr. Aghi gave the plaintiff a letter of recommendation "but did not provide other, essential, advocacy" for his "candidacy in 2021 or thereafter."[32]

On March 19, 2021, Philip Starr, M.D., Ph.D., who oversaw Neurological Surgery trainees, told the plaintiff that he refused to select him for a UCSF Neurological Surgery residency because the plaintiff had a "higher risk of killing a patient than others," and his "capacity to work long hours is not good enough to be a resident."[33] (In contrast, his evaluation of the plaintiff in 2018 for a clinical clerkship said that the plaintiff "was thorough and very personable with patients. He had a good bedside manner. [He] took on a project to improve interoperative targeting accuracy. Keep up the good work!"[34]) As part of UCSF's Office for Prevention of Harassment and Discrimination's investigation, Dr. Starr said the following: "it's easier to finish residency in your 30's and it's just physically harder after that," "this kind of schedule . . . was easier for those in their 20's and 30's," "an applicant's energy level, enthusiasm, and work ethic must be high," and "every year is precious," meaning, the plaintiff should consider a shorter residency to get into his "productive time" faster.[35]

---

[30] *Id.* (¶ 19).

[31] Letter, Ex. D to *id.* – ECF No. 56-1 at 17.

[32] Spatz Decl. – ECF No. 56-1 at 5 (¶ 21).

[33] *Id.* (¶ 25).

[34] Evaluation, Ex. G to Spatz Decl. – ECF No. 56-1 at 35.

[35] Investigative Report, Ex. G to Patten Decl. – ECF No. 55-4 at 2, 4.

On March 25, 2021, in a meeting with the plaintiff and Dean Jones, Catherine Lucey (the school's Vice Dean for Education) told the plaintiff she had conversations with other physicians — Edward Chang, M.D., the chair of Neurological Surgery, and Dr. Starr — about the plaintiff's "durability for a neurosurgery residency."[36] On April 13, 2021, Dean Lucey sent a letter to the plaintiff about his second unsuccessful year in the matching program, saying that the plaintiff had participated in specified internships and rotations, a third year would not change the fundamentals of his application, and UCSF did not see a path to success. Thus, it would commit its residency advocacy to UCSF students in their first or second round, and "[t]he department will not provide you with additional neurosurgical clinical rotations, since these are in short supply and will be assigned to students in their first or second attempt at a neurosurgery match." Also, "department leadership will not submit past or new letters in support of your candidacy, now or in the future. . . . No student in recent history has been granted a third attempt at matching into the same specialty and to do so would not be in keeping with best practices."[37]

In April 2021, the plaintiff met with Dr. Aghi to discuss a potential postdoctoral position in his laboratory. Dr. Aghi said that he had not advocated for the plaintiff in 2021 because internal investigations at UCSF of the plaintiff's complaints caused Dr. Aghi "frustration," "to hate his job," and "made his life hell."[38]

### 3. The Defendant's Evidence

UCSF accepts about three of three hundred applicants for its neurosurgery residencies.[39] Those accepted are superstars: top schools, top credentials (including Ph.D.s), published works in top

---

[36] Spatz Decl. – ECF No. 56-1 at 5 (¶ 26).

[37] Letter, Ex. H to Spatz Decl. – ECF No. 56-1 at 42.

[38] Spatz Decl. – ECF No. 56-1 at 6 (¶ 28).

[39] Lucey Decl. – ECF No. 63-10 at 8 (¶ 22); Theodosopoulos Decl. – ECF No. 63-7 at 2 (¶ 5).

scientific journals, and demonstrated resilience in aid of medical care for high-risk patients. The work is intense and includes 80-hour work weeks.[40]

The professors deny making ageist statements or say that the plaintiff took them out of context.[41] For example, Dr. Starr explained that he was speaking about the demanding nature of surgical residencies.[42]

The professors describe the plaintiff's "sub-optimal performance on critical metrics."[43] His grades were "middle 31% compared with his 2020 classmates."[44] The primary reason UCSF did not accept the plaintiff was his poor performance in clinical internships.[45] The internships are a "critical" component of matching decisions that amount to residency "auditions." The evaluations noted the plaintiff's chronic tardiness, long breaks, lack of preparation, and lack of professionalism.[46] Following the 2019 internship year, "the residents uniformly did not want to rank" the plaintiff.[47] They said that he was "not good on too many dimensions to enumerate;" "left early, and arrived late, so bad;" "went home while at [San Francisco General Hospital] multiple times, was the only [sub-intern] who went home at night;" "would be a disaster, not a single positive comment from anyone who worked with him;" and "no way!"[48] Another evaluation said that the plaintiff "did not show up to rounds on time," "did not come prepared to rounds," "[d]id not have a list," "[d]id not know the patients," "[d]id not have supplies," "[d]id not supplement rounds," "did not complete assigned tasks on time," and "left call early."[49] The plaintiff was "particularly

---

[40] Theodosopoulos Decl. – ECF No. 63-7 at 2–3 (¶¶ 2–4); Mummaneni Decl. – ECF No. 63-8 at 3 (¶¶ 2–4).

[41] Decls. – ECF Nos. 63-2 to 10.

[42] Starr Decl. – ECF No. 63-3 at 2 (¶ 4).

[43] Opp'n – ECF No. 63 at 10.

[44] Lucey Decl. – ECF No. 63-10 at 5 (¶ 11).

[45] Aghi Decl. – ECF No. 63-9 at 12–13 (¶ 28); Berger Decl. – ECF No. 63-4 at 3–4 (¶ 8); Starr Decl. – ECF No. 63-3 at 3–4 (¶ 7).

[46] Aghi Decl. – ECF No. 63-9 at 4–5 (¶¶ 8–9); Starr Decl. – ECF No. 63-3 at 4 (¶ 7).

[47] Email String, Ex. A to Starr Decl. – ECF No. 63-3 at 6.

[48] *Id.* at 9–10.

[49] Email, Ex. B to Starr Decl. – ECF No. 63-3 at 12.

ORDER – No. 21-cv-09605-LB            9

toxic around women," such as verbally abusing a medical student in Dr. Aghi's lab and referring to a female physician interviewer as "Doris" rather than "Dr. Wang" while referring to the male interviewer by his title.[50]

### 4. The Plaintiff's Reply Evidence

The plaintiff responds that he received a "4," the highest score, in every UCSF internship in 2020.[51] He never received the negative feedback about his performance and identifies positive feedback.[52]

### 5. Procedural History

The court held a hearing on December 22, 2022. The parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[53]

# LEGAL STANDARD

The standards for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A movant must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that would result if an injunction were not issued, (3) that the balance of equities tips in favor of the plaintiff, and (4) that an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The irreparable injury must be both likely and immediate. *Id.* at 20–22. "[A] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Before *Winter*, the Ninth Circuit employed a "sliding scale" test that allowed a plaintiff to prove either "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its

---

[50] Aghi Decl. – ECF No. 63-9 at 6–7 (¶¶ 12–13).

[51] Spatz Suppl. Decl. – ECF No. 65-1 at 2 (¶ 4).

[52] *Id.* at 1–2 (¶¶ 3–8).

[53] Consents – ECF Nos. 12, 13.

favor." *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999) (cleaned up). On this continuum, "the greater the relative hardship to [a movant], the less probability of success must be shown." *Id.* After *Winter*, the Ninth Circuit held that although the Supreme Court invalidated one aspect of the sliding scale approach, the "serious questions" prong of the sliding scale survived if the plaintiff satisfied the other elements for preliminary relief. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011). Thus, a preliminary injunction may be appropriate when a movant raises "serious questions going to the merits" of the case and the "balance of hardships tips sharply in the plaintiff's favor," provided that the other elements for relief are satisfied. *Id.* at 1134–35.

## ANALYSIS

The court denies the plaintiff's motion primarily because the plaintiff has not established the *Winter* factors.

First, the plaintiff has not established a likelihood of success on the merits or, assuming he satisfies the other elements of the *Winter* test, serious questions going to the merits of his federal claim. The program is competitive, accepting only three of about 300 candidates each year. The plaintiff performed well on some metrics, but contemporaneous evidence from his internships shows poor reports of his clinical performances. There is evidence of age-related comments but there is evidence too that it was taken out of context. The record similarly does not support a likelihood of success on the merits based on UCSF's alleged deliberate indifference in failing to investigate age discrimination, either for the 2017 complaint or based on the residency-application process. The crux of the case is the application process: at best the evidence is mixed, and there are substantial issues about whether the plaintiff's core competencies (not age) drove the decisions. The plaintiff also did not establish a likelihood of success on the merits based on retaliation by Dr. Aghi or others, again for the reason that there are disputes of fact about whether competencies, not retaliation, informed UCSF's decisions. Also, the record does not allow any conclusion on the alleged failure to credit the plaintiff for his work in Dr. Aghi's lab.

Second, it may be a closer question about whether the plaintiff will suffer irreparable harm. But this is not reinstatement, for example, to an existing position. Moreover, the plaintiff admits it

is nearly impossible to get a Neurological Surgery residency. Whatever relief is appropriate is equally available after the disputes of fact are tested through the litigation process. Also, there is evidence that he has other options, including through other residencies or research.[54] It seems a stretch to award (or maintain) an open position at UCSF through preliminary relief, especially (and again) when facts are disputed.

Third, the balance of equities does not tip in the plaintiff's favor. Adding an extra spot is a hardship: patient volume and accreditation drive program size.[55]

Fourth, the injunction is not in the public interest. The relief implicates public safety involving the training of doctors in a competitive and technical field. The plaintiff's claims can be tested through litigation, but they are not appropriately addressed through preliminary relief, especially given the disputes of fact.

An ancillary issue is the plaintiff's alleged failure to give notice under 42 U.S.C. § 6104(e)(1) to the U.S. Secretary of Health and Human Services, the Attorney General of the United States, and the defendant.[56] The plaintiff said that he gave the notice.[57] This does not affect the outcome in any event.

## CONCLUSION

The court denies the plaintiff's motion for preliminary injunction. This disposes of ECF No. 56.

**IT IS SO ORDERED.**

Dated: January 4, 2023

LAUREL BEELER
United States Magistrate Judge

---

[54] Aghi Decl. – ECF No. 63-9 at 3 (¶ 5); Miller Decl. – ECF No. 57 at 4 (¶¶ 17–18).

[55] Lucey Decl. – ECF No. 63-10 at 8 (¶ 22–23); see also Aghi Decl. – ECF No. 63-9 at 14 (¶ 31).

[56] Opp'n – ECF No. 63 at 27.

[57] Patten Decl. – ECF No. 56-2 at 2 (¶ 7).